UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KEJUAN MARCELL DOUGLAS,

                 Petitioner,

                               Case No. 2:23-cv-15

v.

                               Hon. Hala Y. Jarbou

CATHERINE S. BAUMAN,

                  Respondent.

_____/

## OPINION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Kejuan Marcell Douglas is incarcerated with the Michigan Department of Corrections at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I). On March 5, 2015, the court sentenced Petitioner to consecutive sentences of 20 to 60 years' incarceration.

       On January 20, 2023, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

I.      Trial court abused its discretion [by] failing to grant a mistrial after [the] prosecution['s] motion to add a new witness during trial.

II.     Trial court erred without holding an evidentiary hearing that [Petitioner] was not deprived of effective assistance of counsel when trial counsel failed to investigate and present an alibi defense at trial.

III.    Trial court abused its discretion [by failing] to state on the record its reasoning for consecutive sentencing, and new evidence supports the conclusion that the trial court is unable to justify the imposition of consecutive sentences.

(Pet., ECF No. 1, PageID.6–9.) Respondent contends that Petitioner's grounds for relief are

meritless.[1] (ECF No. 10.) For the following reasons, the Court concludes that Petitioner has failed

to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for

writ of habeas corpus.

<u>Discussion</u>

## I.    Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as

follows:

> A jury convicted [Petitioner and Charles Douglas], who are brothers, of sexually
> assaulting a 16–year–old female victim inside a van in an isolated Detroit
> neighborhood on August 16, 2013. Approximately one month before the assault,
> the victim met Charles on Tagged.com, a free online social website, and on the day
> in question she decided to ask him for a ride to her Inkster home. The prosecution
> presented evidence that after Charles picked up the victim in a van, he then picked
> up Kejuan and another, unidentified man. Charles made several stops, including at
> a motel, where the victim informed him that she wanted to go home. Charles did
> not take her home, but instead parked on a dark street. Kejuan pulled the victim into
> the back of the van, and she was forced to perform fellatio on Kejuan while Charles
> simultaneously sexually assaulted her from behind. After this, Kejuan forced
> penile-vaginal sex upon her. When Kejuan finished, the unidentified man sexually
> assaulted the victim with defendants' encouragement. The victim was ultimately
> left on the street, but managed to take Charles's phone. As the victim was on the

---

[1] Respondent also contends that grounds II and III are procedurally defaulted. (ECF No. 10,
PageID.53–54.) Respondent does recognize, however, that a habeas corpus petition "may be
denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available
in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held
that federal courts are not required to address a procedural default issue before deciding against
the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy
might counsel giving the [other] question priority, for example, if it were easily resolvable against
the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.");
*see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural
default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*,
351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127
F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). With regard to the claimed procedural
default of habeas ground II, rather than conduct a lengthy inquiry into exhaustion and procedural
default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's
claim. With regard to habeas ground III, however, the Court will consider Respondent's contention
that Petitioner has procedurally defaulted his sentencing claim.

phone with 911, the van returned and Charles chased her to the porch of a house, attempting to retrieve his phone. Charles fled and the homeowner opened the door. DNA recovered from abrasions on the victim and a towel that Charles had used and left at the scene matched Charles's DNA profile. The prosecution also presented evidence that Charles's DNA was matched to DNA obtained in another sexual assault case in 2013, in which that victim, who identified Charles, similarly testified that she met Charles on Tagged.com, that he picked her up, and that he drove her to a house where she was sexually assaulted by him and several other men. Kejuan's defense theory at trial was that he was misidentified as an assailant. Charles, who testified on his own behalf, denied any wrongdoing, and claimed that he engaged in consensual sexual activity with the victim.

*People v. Douglas*, Nos. 326666, 327354, 2016 WL 6495285, at *1 (Mich. Ct. App. Nov. 1, 2016).

Petitioner and his brother were tried jointly. Jury selection for their trial began on February 10, 2015. (Trial Tr. I, ECF No. 11-6.) Over the course of three days, the jury heard testimony from numerous witnesses, including the victim, an individual who overheard the assault, law enforcement officials, and Petitioner's brother. (Trial Tr. II, III, and IV, ECF Nos. 11-7, 11-8, and 11-10.) On February 18, 2015, after only an hour of deliberation, the jury reached a guilty verdict. (Trial Tr. V, ECF No. 11-11, PageID.986.) Petitioner appeared before the trial court for sentencing on March 5, 2015. (ECF No. 11-12.)

Petitioner, with the assistance of appellate counsel, appealed his convictions and sentence to the Michigan Court of Appeals, arguing only that the trial court "abused its discretion by denying his motion for a mistrial after the court admitted newly discovered other-acts evidence against Charles." *Douglas*, 2016 WL 6495285, at *2. The court of appeals affirmed Petitioner's convictions and sentences on November 1, 2016. *Id.* at *1.[2]

Petitioner subsequently filed a *pro per* application for leave to appeal to the Michigan Supreme Court. (ECF No. 11-16, PageID.1131.) In an order entered on October 31, 2017, the

_____

[2] Petitioner's brother's appeal was addressed in the same opinion. The court of appeals affirmed Charles's convictions, but remanded "for further inquiry of [his] sentences consistent with" *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). *Douglas*, 2016 WL 6495285, at *1.

supreme court noted that, in lieu of granting leave to appeal, it was remanding the matter to the Wayne County Circuit Court "to determine whether the court would have imposed a materially different sentence under the sentencing procedure described" in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). *People v. Douglas*, 902 N.W.2d 619 (Mich. 2017). The supreme court noted that Petitioner was entitled to resentencing if the trial court determined that "it would not have imposed the same sentence absent the unconstitutional constraint on its discretion." *Id.* The supreme court denied leave to appeal in all other respects. *Id.*

The trial court held a hearing regarding the *Lockridge* issue on December 6, 2017. (ECF No. 11-13.) After hearing from the parties, the trial court indicated that the original sentence "that was imposed was appropriate then, and it is imposed again." (*Id.*, PageID.1026.) Petitioner subsequently filed a delayed application for leave to appeal his resentencing to the Michigan Court of Appeals, and the court of appeals denied his application "for lack of merit in the grounds presented" in an order entered on December 21, 2018. (ECF No. 11-19, PageID.1802.)

On April 8, 2019, Petitioner filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500 in the trial court. (ECF No. 11-14.) In that motion, Petitioner asserted several claims of ineffective assistance of trial counsel, as well as a claim of ineffective assistance of appellate counsel and due process claims related to his sentencing. (*Id.*, PageID.1029–1030.) The trial court denied Petitioner's Rule 6.500 motion in an opinion and order filed on July 24, 2020. (ECF No. 11-15.) The court of appeals and supreme court denied Petitioner's applications for leave to appeal on April 14, 2021, and November 2, 2022, respectively. (ECF No. 11-18, PageID.1374; ECF No. 11-20, PageID.1847.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685,

693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it

decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563

U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Discussion

### A.   Ground I—Denial of Mistrial

Petitioner's first ground for relief is that the trial court abused its discretion by failing to grant a mistrial after the prosecution moved to add a new witness during trial. (Pet., ECF No. 1, PageID.6.) Petitioner contends that this witness's testimony prejudiced him and tainted the jury, and that "[n]o jury instruction can cure or [separate] credibility in a joint trial." (*Id.*)

This is the only claim Petitioner raised on direct appeal, and the court of appeals rejected it, stating:

> In his only issue on appeal, [Petitioner] argues that the trial court abused its discretion by denying his motion for a mistrial after the court admitted newly discovered other-acts evidence against Charles. We review a trial court's ruling on a motion for a mistrial for an abuse of discretion. *People v. Schaw,* 288 Mich. App. 231, 236; 791 N.W.2d 743 (2010). An abuse of discretion occurs when a trial court chooses an outcome that is outside the range of principled outcomes. *Id.*
>
> Before trial, [Petitioner] had no objection to a joint trial. After trial started, the prosecution received information that codefendant Charles's DNA had been matched to a similar sexual assault case. Ultimately, the trial court agreed to admit the newly discovered other-acts evidence against codefendant Charles only. In turn,

[Petitioner] moved for a mistrial, arguing that in light of this newly discovered evidence against his codefendant, he was entitled to a separate trial. The trial court denied his motion.

A mistrial should be granted "only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id.* (citations and quotation marks omitted). In general, a defendant does not have a right to a separate trial. *People v. Hurst,* 396 Mich. 1, 6; 238 N.W.2d 6 (1976). Indeed, a strong policy favors joint trials in the interest of justice, judicial economy, and administration. .*People v. Etheridge,* 196 Mich. App. 43, 52; 492 N.W.2d 490 (1992). Severance is mandated under MCR 6.121(C) only when a defendant demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. *People v. Hana,* 447 Mich. 325, 345; 524 N.W.2d 682 (1994), amended 447 Mich. 1203 (1994). For severance to be warranted, a defendant must submit an affidavit or make an offer of proof that "clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Id.* at 346. "The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision." *Id.* at 346–347. Mere inconsistency of defenses is not enough to require severance; the defenses must be mutually exclusive or irreconcilable. *Id.* at 349. "[I]ncidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice. The tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other." *Id.* (citations and quotation marks omitted). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 359–360 (citations and quotation marks omitted).

To hold separate trials in these substantially identical cases would have been unnecessarily duplicative and excessive. The interests of justice, judicial economy, and orderly administration clearly favored a joint trial. [Petitioner] has not provided any concrete facts or reasons to justify separate trials and has not persuasively demonstrated that his substantial rights were prejudiced by a joint trial. The record does not show a "significant indication" that the requisite prejudice in fact occurred at trial. *Id.* at 346–347. [Petitioner's] mere speculation about the possibility of antagonistic defenses is insufficient to require a separate trial; he made no offer of proof demonstrating a defense that would have required the jury to believe one defendant at the expense of the other. On appeal, he adds the argument that had he known that other-acts evidence would be presented against Charles, "there was the possibility he could have presented a defense claiming that it was Charles and not him who committed the offenses, that [the victim] was mistaken in her identification, [and] that his brother, Charles, had brought him into the picture in order to minimize his own involvement [in] the offenses." [Petitioner's] defense theory, however, was already that he was misidentified, i.e., that he was not there, and that the victim was not credible. Further, "finger pointing" is not a sufficient

reason to grant separate trials. See *id.* at 360–361. Finally, the risk of prejudice from the joint trial was allayed by a proper cautionary instruction. *Id.* at 351, 356. The trial court instructed the jury that each case was to be decided separately and, regarding the other-acts testimony against codefendant Charles, specifically instructed:

> [T]his evidence that you are about to hear applies *only to the defendant, Charles Douglas.*
>
> It is not evidence of any kind, and *you can not [sic] consider it in any way as it applies to the other defendant, Mr. Kejuan Douglas.*
>
> Okay. So it's being introduced for a limited purpose and *only as it applies to the defendant, Charles Douglas.* [Emphasis added.]

[Petitioner] acknowledges the trial court's instruction, but asks this Court to presume that the jury ignored the instruction and used the other-acts evidence to his detriment. It is well established, however, that jurors are presumed to have followed their instructions. *People v. Breidenbach,* 489 Mich. 1, 13; 798 N.W.2d 738 (2011). [Petitioner] has not identified any record support, and we have found none, for his suggestion that the jury disregarded the trial court's instruction. Because [Petitioner] has failed to show that he was entitled to severance, the trial court's denial of his motion for a mistrial on that basis was not an abuse of discretion.

*Douglas*, 2016 WL 6495285, at *2–3.

With respect to Petitioner's claim that the trial court erred in denying his request for a mistrial, the decision to grant or deny a mistrial is, generally, a matter under state law, and a challenge to such a decision is not cognizable on federal habeas review. *See, e.g.*, *Barry v. Warren*, No. 19-1855, 2019 WL 7834652, at *3 (6th Cir. Dec. 11, 2019); *Hruby v. Wilson*, 494 F. App'x 514, 516 (6th Cir. 2012). That decision, however, may impact federal constitutional rights. *Arizona v. Washington*, 434 U.S. 497, 514 (1978) ("[A] constitutionally protected interest is inevitably affected by any mistrial decision."). For example, if a mistrial is requested because of perceived unfairness caused by the admission of evidence or improper argument, and the request is denied, the underlying impropriety might result in the denial of due process. Thus, federal habeas courts "have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion'" when considering a request to declare a mistrial. *Washington*, 434 U.S. at 514. Filtered through

the doubly deferential standard of the AEDPA, "[t]he question . . . is . . . whether the determination of the [state courts] . . . was 'an unreasonable application of . . . clearly established Federal law.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010).

In his reply brief, Petitioner suggests that the denial of his request for a mistrial violated his due process rights because the admission of the other-acts evidence "included irrelevant, incriminating, [prejudicial] testimony." (ECF No. 12, PageID.1975.) Petitioner suggests that the trial court should not have admitted the other-acts evidence because of "its inflammatory nature and the high probability that the jury would use it improperly to convict the petitioner of the current charges based on a propensity inference." (*Id.*, PageID.1976.) Petitioner reiterates his belief that a limiting instruction was insufficient to "guard against unfair prejudice." (*Id.*)

On direct appeal, Petitioner's brother Charles argued that the trial court abused its discretion in admitting the other-acts evidence, and the court of appeals rejected his argument. *Douglas*, 2016 WL 6495285, at *4. To the extent Petitioner challenges the admission of such testimony, he fails to state a claim for habeas relief. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68.

It is not inconceivable, however, that evidence properly admitted under state law might still have the effect of rendering Petitioner's trial unfair. State court evidentiary rulings, though, "cannot rise to the level of due process violations unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach affords the state courts wide latitude for ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Moreover, under the AEDPA, a federal court may not grant relief if it would have decided the evidentiary question differently. A federal court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law, or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "'a Supreme Court case establishing a due process right with regard to the specific kind of evidence' at issue").

Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the testimony at issue, regardless of whether it was covered by Rule 404(b). *See Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013) (concluding that even if the trial court violated Michigan Rule of Evidence 404(b), such "'garden-variety' character-evidence error does not 'cross the constitutional threshold' of due process"). Indeed, there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting

11

propensity evidence in the form of "other bad acts" evidence. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Moreover, "[o]rdinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Here, the record reflects that after the trial court denied Petitioner's motion for a mistrial, and prior to the presentation of the other-acts testimony, the trial court instructed the jury on the use of such testimony. Notably, the trial court instructed the jury that the evidence they were about to hear applied only to Charles Douglas. (Trial Tr. IV, ECF No. 11-10, PageID.751.) The court instructed the jury that it could not consider the evidence as it applies to Petitioner. (*Id.*) The court noted that the testimony was "being introduced for a limited purpose and only as it applies to the defendant, Charles Douglas." (*Id.*) During final jury instructions, the court reiterated that the jury was only to consider that evidence as to Charles Douglas and whether he "used a plan, system[,] or characteristic scheme that he has used before." (Trial Tr. V, ECF No. 11-11, PageID.964.) As

noted by the court of appeals, jurors are presumed to follow their instructions. Contrary to Petitioner's assertion, that determination is entirely consistent with clearly established federal law. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (noting that "[a] jury is presumed to follow its instructions").

Because Petitioner's due process rights were not violated by the admission of other-acts evidence relating to his brother Charles, and because the denial of his motion for a mistrial did not violate due process, Petitioner cannot demonstrate that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas ground I.

**B.    Ground II—Failure to Hold Evidentiary Hearing Regarding Ineffective Assistance of Trial Counsel**

In his second ground for relief, Petitioner faults the trial court for not holding an evidentiary hearing regarding Petitioner's claim that he was denied ineffective assistance of trial counsel when counsel failed to investigate and present an alibi defense. (Pet., ECF No. 1, PageID.7.) Petitioner suggests that the failure to hold an evidentiary hearing violated his due process rights because the trial court "never made itself available to [Petitioner] for [Petitioner] to establish his burden of proof." (*Id.*) In his reply brief, Petitioner avers that the trial court's failure to hold a hearing was unreasonable because it could have determined the "credibility of the new proposed witness." (ECF No. 12, PageID.1987.) Petitioner also takes issue with the trial court's rejection of his underlying ineffective assistance claim.

As an initial matter, any error by the trial court in applying its own rules to deny Petitioner an evidentiary hearing is an issue of state law that is not cognizable on habeas review. *See Simpson v. Jones*, 238 F.3d 399, 406–07 (6th Cir. 2000) (citing *Estelle*, 502 U.S. at 67–68; *Smith v. Phillips*, 455 U.S. 209, 221 (1982)). In addition, "the Sixth Circuit has consistently held that errors in post-

conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). "[T]he traditional function of the writ is to secure release from illegal custody," *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), but a due process claim with respect to post-conviction proceedings, even if resolved in Petitioner's favor, would not impact Petitioner's custody. In reviewing such a claim, the Court "would not be reviewing any matter directly pertaining to" that custody. *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). If this Court were to conclude that the trial court erred by not holding an evidentiary hearing, Petitioner would not automatically be released from custody or granted a new trial. Rather, the likely remedy would be that Petitioner would receive a *Ginther*[3] hearing regarding his ineffective assistance claim. For that reason alone, Petitioner's assertion that the trial court erred by not holding an evidentiary hearing is not cognizable.

Although Petitioner has worded his second ground for relief to focus on the lack of an evidentiary hearing, he devotes a large portion of his reply brief to discussing the merits of his ineffective assistance claim and challenging the trial court's denial of that claim. Thus, out of an abundance of caution, the Court will address the merits of Petitioner's claim that counsel was ineffective for failing to investigate and present an alibi defense below.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance

---

[3] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

prejudiced the [Petitioner] resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The [Petitioner] bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the [Petitioner] is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d), analysis of counsel's performance. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has

recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas

and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

In addressing Petitioner's claims of ineffective assistance, the trial court applied the

following standard:

> However, in order to establish ineffective assistance of counsel, a defendant must
> show that: (1) the performance of his counsel was below an objective standard of
> reasonableness under the prevailing professional norms; and (2) the representation
> was so prejudicial to him that he was denied a fair trial. *People v. Toma*, 4672 Mich.
> 281, 302; 613 N.W.2d 694 (2000); *People v. Pickens*, 446 Mich. 298; 521 N.W.2d
> 797 (1994). The reviewing court in applying this test indulges a strong presumption
> that defense counsel['] conduct falls within the wide range of reasonable
> professional assistance and Defendant bears the heavy burden of proving otherwise.
> *People v. Mitchell*, 454 Mich. 145, 156; 560 N.W.2d 600 (1997); *People v. Rockey*,
> 237 Mich. App. 74, 76; 601 N.W.2d 887 (1999).
>
> Defendant is required to overcome a strong presumption that the assistance of
> counsel was sound trial strategy. *Toma*, *supra* at 302. Under the first prong of the
> test, the alleged errors must be so serious that [the] defense attorney was not
> functioning as the "trial counsel" guaranteed by the Sixth Amendment. *Mitchell*,
> *supra* at 164–165. Under the prejudice prong, the Defendant "must demonstrate 'a
> reasonable probability, that but for counsel's unprofessional errors, the result of the
> proceeding would have been different . . . .'" *Toma*, *supra* at 302–303 (quoting
> *Mitchell*, *supra* at 167). "A reasonable probability is a probability sufficient to
> undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668,
> 694 (1984).

(ECF No. 11-15, PageID.1116–1117.) Although the trial court primarily cited state law when

setting forth the standard, *Pickens* identifies *Strickland* as the source of the standard. Thus, there

is no question that the trial court applied the correct standard.

The trial court's application of the correct standard eliminates the possibility that the

resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in

*Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different,"
> "opposite in character or nature," or "mutually opposed." Webster's Third New
> International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests
> that the state court's decision must be substantially different from the relevant
> precedent of this Court. The Fourth Circuit's interpretation of the "contrary to"

clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the trial court applied the correct standard Petitioner can only overcome the deference afforded state court decisions if the determination regarding Petitioner's ineffective assistance claim is an unreasonable application of *Strickland* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). The Court, therefore, will consider whether the trial court reasonably applied the standard for Petitioner's claim of ineffective assistance of counsel.

In his Rule 6.500 motion, Petitioner faulted trial counsel for not investigating and interviewing the two potential alibi witnesses Petitioner had provided. (ECF No. 11-14, PageID.1036.) According to Petitioner, Ms. Tashunda Newborn would have testified that Petitioner was at home with her and her mother on the evening in question "and never left at all surrounding the time of the alleged sexual assault." (*Id.*) Petitioner attached a notarized affidavit, dated February 4, 2019, from Ms. Newborn to his Rule 6.500 motion. (*Id.*, PageID.1076–1077.)

17

In that affidavit, Ms. Newborn set forth that she would have testified that Petitioner was at home with her and her mother during the time in question. (*Id.*) Ms. Newborn also stated that she "revealed herself and the facts surrounding her witness status to Defense Attorney Wayne Frost by leaving several messages and this affiant's mother Lashunda Newborn called and left messages as well while this affiant looked on, this affiant and her both waited for the herein mentioned attorney to call us as witnesses." (*Id.*, PageID.1077.) Petitioner also attached his own notarized affidavit, in which he reiterated that he was with Ms. Newborn and her mother on the night in question and that Petitioner told trial counsel about these witnesses. (*Id.*, PageID.1080–1081.)

The trial court rejected Petitioner's claim, stating:

[Petitioner] claims his trial counsel did not contact two leads for potential alibi witnesses, which denied him a fair trial. However, [Petitioner] and his brother were tried jointly, and it was deduced that [Petitioner] and his brother, along with an unknown man, picked up the complainant in their van after making acquaintances with her through a social media application. [Petitioner] claims potentially his girlfriend and her mother[] would have testified he was home with them during the timeframe when the complainant was sexually assaulted. The complainant clearly testified [Petitioner], his brother[,] as well as an unknown man sexually assaulted her in the back of their van. [Petitioner] states his then pregnant girlfriend, Tashunda Newborn[], and her mother, Lashundra Newborn, potentially could have provided him with an alibi, but counsel has no duty to call witnesses whom he believes will provide the court with false testimony. Defense Counsel's decision not to utilize [Petitioner's] alleged alibi witnesses was a matter of trial strategy because Michigan has long followed this rule and held that evidence that a defendant has attempted to suppress testimony or induce perjury is admissible. *People v. Salsbury*, 134 Mich. 537, 96 N.W. 936 (1903); *People v. Adams*, 162 Mich. 371, 127 N.W. 354 (1910). This Court reaffirmed this longstanding rule in *People v. Casper*, 25 Mich. App. 1; 180 N.W.2d 906 (1970), wherein the rule was stated as follows:

Michigan authority appears uniform in holding that actions by the defendant such as flight to avoid lawful arrest, **procuring perjured testimony** and attempts to destroy evidence, while possibly as consistent with innocence as with guilt, **may be considered by the jury as evidence of guilt**. *People v. Ranes*, 227 N.W.2d 312; 58 Mich. App. 268 (1975).

(ECF No. 11-15, PageID.1118–1119.) The trial court noted in a footnote that, according to Petitioner, Tashunda Newborn had passed away since signing her affidavit and would therefore be unavailable to testify at an evidentiary hearing. (*Id.*, PageID.1118.)[4]

Petitioner offers no evidence, much less clear and convincing evidence, to overcome the presumption of correctness afforded to the trial court's factual determinations. At trial, the victim testified that on the night of the incident, she asked Petitioner's brother Charles for a ride home. (Trial Tr. II, ECF No. 11-7, PageID.388.) On the way, they stopped at another house, and two of Charles' friends came out. (*Id.*, PageID.395.) The victim testified that both individuals got into the van. (*Id.*, PageID.396.) She was able to see Petitioner when he got into the van, and she identified Petitioner as the same individual as the one she saw getting into the van. (*Id.*, PageID.397.) The victim also testified that Petitioner was the one who snatched her phone out of her hand. (*Id.*, PageID.405.) She testified further that Petitioner grabbed her arm and pulled her back into "the middle area of the van where he was." (*Id.*, PageID.409.) Petitioner then forced the victim to perform fellatio. (*Id.*, PageID.412–413.) Petitioner then forced the victim to sit on him, and the victim testified that Petitioner was wearing a condom. (*Id.*, PageID.416–417.) Petitioner also testified that she identified Petitioner from a photo array after the incident and later learned his name. (*Id.*, PageID.445–446.)

Given this testimony, fair-minded jurists could conclude that there is no reasonable probability that any alibi testimony would have changed the outcome of Petitioner's trial. *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013) (concluding that habeas petitioner could

---

[4] In his reply brief, Petitioner asserts that the trial court erroneously stated that Tashunda Newborn had passed away, when it was her mother, Lashunda Newborn, who was deceased. (ECF No. 12, PageID.1969.) Petitioner provides no evidence to support this assertion, but in any event, any misidentification of the potential alibi witness who was deceased has no bearing on the outcome of Petitioner's ineffective assistance claim.

not show prejudice from counsel's failure to call an alibi witness where two eyewitnesses positively identified the petitioner as the perpetrator). The victim had no reason to lie about what happened to her and had no reason to lie about her identification of Petitioner as one of the three men who was in the van with her on the evening the sexual assault occurred. Conversely, Tashunda Newborn and her mother would have had motive to absolve Petitioner, who was Tashunda's boyfriend at the time, by lying about Petitioner's whereabouts on that night.

Furthermore, Tashunda waited until almost four years after Petitioner was convicted to sign her affidavit. Although she indicated that she had called Petitioner's attorney several times, her affidavit lacks any details regarding on what dates she made those calls. Likewise, Petitioner's affidavit lacks details concerning when he mentioned his potential alibi witnesses to counsel. Petitioner was convicted in 2015; if Tashunda believed that Petitioner "had been wrongly convicted and was languishing in prison, why wait?" *Ashmon v. Davis*, 508 F. App'x 486, 488 (6th Cir. 2012). Tashunda's affidavit, which was created after trial, is simply not sufficiently reliable to suggest that her testimony would have changed the outcome of Petitioner's trial. *See Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x at 528, 531–32 (11th Cir. 2009). Furthermore, there is no indication that either Tashunda or her mother ever went to law enforcement officials with this allegedly exculpatory information. Moreover, Tashunda does not state that she and her mother were available to testify at the time of trial. She only states that she waited to be called as a witness but provides no indication that she was even aware of when Petitioner's trial was held or was present at trial.

Overall, the timing of Tashunda Newborn's affidavit is suspect and does not lend itself to a conclusion that the presentation of alibi testimony would have led the jury to acquit Petitioner. Moreover, counsel could have reasonably concluded that Tashunda and her mother were not

credible alibi witnesses given that Tashunda was allegedly in a relationship with Petitioner at the time. *Cf. Stadler v. Berghuis*, 483 F. App'x 173, 176–77 (6th Cir. 2012) (concluding that trial counsel could have reasonably concluded that proposed alibi witnesses were not credible because they were related to the defendant). Given the victim's testimony, particularly her testimony about identifying Petitioner, this Court cannot conclude that Petitioner was prejudiced by counsel's failure to investigate and present an alibi defense.

In sum, Petitioner has not demonstrated that the trial court's rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to relief with respect to habeas ground II.

## C.      Ground III—Sentencing Issue

Petitioner's third and final ground for relief is that the trial court abused its discretion by failing to "state on the record its reasoning for consecutive sentencing, and new evidence supports the conclusion that the trial court is unable to justify the imposition of consecutive sentences." (Pet., ECF No. 1, PageID.9.) According to Petitioner, his consecutive sentences are invalid because the trial court "did not even make a cursory statement of its reasons for the imposition of consecutive sentences upward departing [from] the Petitioner's guidelines, or when it was provided a second opportunity to do so on prior remand by the Michigan Supreme Court." (ECF No. 12, PageID.1996.) Petitioner suggests further that the consecutive sentences are "disproportionate to his culpability in relation to his codefendants." (*Id.*, PageID.1997.)

### 1.      Exhaustion and Procedural Default

Respondent contends that Petitioner's third ground for habeas relief is unexhausted and procedurally defaulted because he "never presented a claim that the trial court erred in imposing consecutive sentences to either Michigan appellate court." (ECF No. 10, PageID.103.)

21

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner acknowledges that he did not raise this claim on direct appeal and asserts that he raised it in his Rule 6.500 motion. (Pet., ECF No. 1, PageID.9; ECF No. 12, PageID.1993.) A review of the record, however, suggests that Petitioner's assertion is misplaced. At Petitioner's resentencing, counsel did ask that the trial court "make the sentences concurrent so [Petitioner] would be doing 20 years on his minimum." (ECF No. 11-13, PageID.1016.) Petitioner filed a delayed *pro per* application for leave to appeal to the Michigan Court of Appeals, but a review of Petitioner's application indicates that he argued only that the trial court "did not practice stare decisis to the Supreme Court's order of remand, nor this Court's order concerning remand concerning the proportionality of [Petitioner's] sentence." (ECF No. 11-19, PageID.1807.) Nowhere in that application did Petitioner take issue with his sentences being imposed consecutively.

Petitioner subsequently raised claims regarding his sentence in his Rule 6.500 motion. Petitioner, however, argued that the trial court failed "to articulate a substantial and compelling rationale for the extent of the upward departure of the minimum sentence from the sentencing guidelines range." (ECF No. 11-14, PageID.1029.) He also asserted that he was entitled to resentencing because he was sentenced on inaccurate information and incorrectly scored Offense Variables (OVs). (*Id.*) Again, nowhere in that motion did Petitioner raise any issue regarding the consecutive nature of his sentences.

Based on the state court record, it is apparent that Petitioner failed to fairly present and exhaust habeas ground III. However, as the United States Court of Appeals for the Sixth Circuit has recognized:

> Exhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.

*Rust*, 17 F.3d at 160. Here, there is no further remedy for Petitioner to pursue in the state courts— his direct appeal is concluded, and he has already filed a motion for relief from judgment pursuant to Rule 6.500. Accordingly, Petitioner's failure to present his consecutive sentence claim in the state courts has resulted in a procedural default of habeas ground III.

Because of the procedural default, Petitioner must establish cause and resulting prejudice or by showing that the Court's consideration is necessary to avoid a miscarriage of justice. *Bradshaw v. Richey*, 546 U.S. 74, 79 (2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)); *see also Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (noting that the court has "the option . . . to excuse a procedural default and review a defaulted claim on the merits if a petitioner demonstrates '(1) cause for the default and actual prejudice, or (2) that the failure to

consider the claim will result in a fundamental miscarriage of justice.'") (quoting *Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004)). To show sufficient cause, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *See Gray*, 518 U.S. at 162. Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner vaguely suggests that he did not raise this claim on direct appeal because "[a]ppellate counsel failed to investigate the record to establish the ground for relief." (Pet., ECF No. 1, PageID.9.) Although Petitioner raised a claim of ineffective assistance of appellate counsel in his Rule 6.500 motion, nowhere in that motion did he fault appellate counsel for failing to assert a claim related to his consecutive sentences. (ECF No. 11-14, PageID.1070.) While ineffective assistance of appellate counsel may serve as cause to excuse a procedural default, such a claim itself must have been exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Because of this, Petitioner's claim of ineffective assistance of appellate counsel cannot serve as cause to excuse his procedural default of habeas ground III. Therefore, prejudice need not be considered.

Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence. For all of the reasons set forth in this opinion, he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to

24

find him guilty beyond a reasonable doubt.'" *Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001) (quoting *Schlup*, 513 U.S. at 329), *superseded in other part by statute as recognized in Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020). Given the rarity of such evidence, the allegation of actual innocence has been summarily rejected in virtually every case. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

The court must determine whether Petitioner has demonstrated actual innocence by clear and convincing evidence, such that his conviction represents a "fundamental miscarriage of justice." *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Petitioner does not attempt to introduce new evidence. Rather, he merely attempts to relitigate evidence that was available at the time of trial. Thus, any possible claim of actual innocence that Petitioner might raise has no merit and cannot justify excusing a procedural default.

In short, relief on Petitioner's habeas ground III is foreclosed by his procedural default. Nevertheless, the Court considers the merits of his claim below.

### 2.    Merits of Petitioner's Sentencing Claim

In his reply brief, Petitioner suggests that the imposition of consecutive sentences violated his due process rights. (ECF No. 12, PageID.1992.) However, "the application of state sentencing laws governing consecutive sentencing does not present a federal constitutional question but merely an issue of state law which is not cognizable on habeas review." *Hoffman v. Tribley*, No. 13-10868, 2013 WL 1137353, at *2 (E.D. Mich. Mar. 19, 2013); *see also Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998) (holding that although the trial court may have violated a state criminal rule in changing the petitioner's sentence from concurrent to consecutive sentences in his absence, "this error does not . . . constitute a violation of procedural due process of law," but rather is an alleged violation of state law "that is not cognizable in a federal habeas corpus proceeding"); *Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state

prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding").

Michigan law provides that in a case where a defendant has been convicted of CSC-I, "the court may order a term of imprisonment . . . to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." *See* Mich. Comp. Laws § 750.520b(3). In Michigan, two crimes are part of the same transaction if they "grew out of a continuous time sequence." *People v. Ryan*, 819 N.W.2d 55, 63–64 (Mich. Ct. App. 2012). As set forth above, the victim testified that on the night of the sexual assault, Petitioner penetrated her mouth with his penis and then subsequently penetrated her vagina. Each of these acts constitutes a separate criminal offense. Michigan law, therefore, authorized the imposition of consecutive sentences for Petitioner's two CSC-I convictions.

Petitioner also suggests that his consecutive sentences are "disproportionate to his culpability in relation to his codefendants." (ECF No. 12, PageID.1997.) The term disproportionate is derived from state court authority regarding sentencing. *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). As noted above, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Thus, any claim by Petitioner that the trial court violated state sentencing guidelines or state sentencing principles regarding disproportionality is purely a state law claim that is not cognizable on habeas review.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of

the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id*. at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is clear that *Milbourn* and, thus, *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5, any claims raised by Petitioner based upon *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

To the extent Petitioner asserts his disproportionality claim as a violation of the Eighth Amendment's proscription against cruel and unusual punishment, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*,

27

501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980))). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

For the foregoing reasons, Petitioner is not entitled to relief for habeas ground III.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

28

Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.

Dated: November 20, 2023                                /s/ Hala Y. Jarbou
                                                        HALA Y. JARBOU
                                                        CHIEF UNITED STATES DISTRICT JUDGE